UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

YITZCHOK MAJEROWITZ,

              Plaintiff,                              Memorandum and Order

                                                  12 Civ. 4592 (ILG) (RLM)

      - against -

STEPHEN EINSTEIN & ASSOCIATES, P.C.,

              Defendant.
-------------------------------------------------------x

GLASSER, United States District Judge:

      Yitzchok Majerowitz ("plaintiff") brings this action against Stephen Einstein & Associates, P.C. ("defendant"), a law firm that is also a debt collector, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., based on five voicemails that defendant left for plaintiff.  Before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Both parties also move for an award of reasonable attorneys' fees, and defendant moves for sanctions pursuant to Federal Rule of Civil Procedure 11.  For the following reasons, the Court GRANTS defendant's motion for summary judgment, DENIES plaintiff's cross-motion for summary judgment, GRANTS defendant's motion for attorneys' fees, DENIES plaintiff's motion for attorneys' fees, and DENIES defendant's motion for sanctions.

## BACKGROUND

The facts pertinent to the pending motion, undisputed unless otherwise noted, are as follows. At some point prior to November 2011 plaintiff incurred a debt on a Citibank account, which was referred to defendant's office for collection. Statement of Facts Per Local Rule 56.1 ("Def.'s 56.1") ¶ 5 (Dkt. No. 11-1); Motion for Summary Judgment ("Def.'s Mot."), Ex. 1 ¶¶ 21, 60–62 (Dkt. No. 11-4). On November 3, 2011, at 12:49 p.m., presumably in response to a communication from defendant, plaintiff called defendant's office and heard the following recorded message, in relevant part:

> Thank you for calling the Law Office of Stephen Einstein & Associates, P.C. This is an attempt to collect a debt, we are debt collectors and any information obtained will be used for that purpose.

Def.'s 56.1 ¶ 4; Def.'s Mot., Ex. 1.[1] Plaintiff then negotiated a settlement of the Citibank debt with a person named Floyd, a representative of defendant. Floyd agreed to call back within the hour to confirm the settlement. Def.'s 56.1 ¶ 6; Def.'s Mot., Ex. 1.

An hour and a half later, another representative from defendant's office called plaintiff and left the following voicemail, noting that plaintiff had spoken to Floyd earlier:

> Hi. This message is for Mr. Yi[t]zchok Majerowitz. This is Ann[a] Roman with the Law Firm of Stephen Einstein. I'm returning your call in regards to reference number 973647. I understand you had spoken to Floyd earlier. If you can please give me a call back. My number is 646-805-2214. Thank you.

Def.'s 56.1 ¶ 7; Def.'s Mot., Ex. 2 ("Voicemail #1"). The following day, November 4, 2011, at 9:10 a.m., he received a second voicemail from defendant's office:

---

[1] The parties have agreed that the telephone recordings are authentic. Def.'s 56.1 ¶ 15. Defendant has provided transcripts of each recording.

> Good morning, uh Yi[t]zchok Majerowitz.  Please contact
> Anna Roman at the Law Office of Stephen Einstein &
> Associates in New York.  You can reach me back at 646-805-
> 2214 and refer back to your reference number of 97364.
> Thank you.

Def.s' 56.1 ¶ 8; Def.'s Mot., Ex. 3 ("Voicemail #2").  Three and a half hours later, plaintiff

called defendant's office and heard the same recorded message that he heard when he

first called on November 3rd, <u>viz.</u> "This is an attempt to collect a debt, we are debt

collectors and any information obtained will be used for that purpose."  Def.'s 56.1 ¶ 9;

Def.'s Mot., Ex. 4.  The settlement reached with Floyd was then finalized.  Plaintiff

agreed to pay a portion of the debt in two installments, the first due on November 7,

2011.  Def.'s 56.1 ¶ 9; Def.'s Mot., Ex. 4.

A letter dated the same day, November 4th, was mailed to plaintiff confirming the

terms of the agreement.  "Stephen Einstein & Associates, P.C." is printed at the top of

the letter, and these two sentences are printed at the bottom:  "This is a communication

from a debt collector and is an attempt to collect a debt.  Any information obtained will

be used for that purpose."  Def.'s 56.1 ¶ 11; Def.'s Mot., Ex. 5.  After plaintiff failed to

submit his first payment by November 7, 2011, Anna Roman left three more voicemails

for him on November 10, 18, and 22, 2011, each of which contained essentially the same

information as Voicemail #2.  Def.'s 56.1 ¶¶ 12–14; Def.'s Mot., Exs. 6–8 ("Voicemails

#3–5").

Plaintiff initiated this action on September 13, 2012, alleging that the voicemails

violated 15 U.S.C. § 1692e(11), which states that the following is a "false, deceptive, or

misleading representation or means in connection with the collection of any debt":

> The failure to disclose in the initial written communication
> with the consumer and, in addition, if the initial
> communication with the consumer is oral, in that initial oral

> communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and <u>the failure to disclose in subsequent communications that the communication is from a debt collector</u>, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(emphasis added).  Defendant moved for summary judgment on February 22, 2013 ("Def.'s Mem.").  Dkt. No. 11.  Plaintiff opposed that motion and filed a cross-motion for summary judgment on March 22, 2013 ("Pl.'s Opp'n").  Dkt. No. 12.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit under the governing law."  <u>Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 720 (2d Cir. 2010) (quotation omitted).  A court deciding a motion for summary judgment must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  <u>Brod v. Omya, Inc.</u>, 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted).

## DISCUSSION

## I. FDCPA Claim

It is a fundamental principle of tort law that the violation of a statute will subject the violator to liability if the person harmed was a member of the class the statute was designed to protect against the harm the statute was designed to prevent.  Although this is not precisely an action sounding in tort, the principle is precisely applicable here.  The

Congressional finding and declaration of purpose to be served by the FDCPA is concisely stated in 15 U.S.C. § 1692(a): "There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." The purpose of the statute is stated in § 1692(e) to be "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."

In Kropelnicki v. Siegel, the Second Circuit quotes the Senate Report stating that the statute was passed in response to "collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No. 95-382, at 2 (1977)).

Plaintiff was a member of the class the statute was designed to protect. He was a consumer. He does not allege that defendant committed any of the collection abuses the statute was designed to prevent. He was not the target of obscene language, he was not threatened with violence, he was not called at all hours of the day or night, he was not deceived regarding his rights as a consumer, his personal affairs were not disclosed, defendant did not impersonate a person he was not. Plaintiff's only grievance is that defendant failed to disclose in every communication to him that it was a debt collector

5

attempting to collect a debt as required by the statute.  His grievance is not merely meritless, it is frivolous.

A determination of whether a communication complies with the FDCPA is made by objectively testing it from the perspective of the least sophisticated consumer "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  That test is also meant to protect the debt collector from claims by the consumer based on unreasonable, bizarre, or idiosyncratic interpretations of the collection communication. Clomon v. Jackson, 988 F.2d 1314, 1318–20 (2d Cir. 1993).

Given the undisputed facts, the Court is driven to conclude that even the most gullible consumer, which this plaintiff was clearly not, would know that defendant was a debt collector attempting to collect a debt.  He would know that not only because the November 3rd response to his first call to defendant's office, quoted above, explicitly told him so.  On the very next day, November 4th, plaintiff called defendant and heard the same recorded message heard the previous day.  It would appear that following that message, he negotiated a settlement of the debt with Floyd and on the same day, November 4th, a letter was sent by defendant which plaintiff received.  The letterhead was defendant's and it also stated, in the language of the statute, that it was from a debt collector attempting to collect a debt.  Plaintiff was thus notified three times within the space of two days that Stephen Einstein & Associates was a debt collector attempting to collect a debt.  The three voicemails recorded after plaintiff failed to make the first payment as agreed each clearly stated that it was from Stephen Einstein.  There was no requirement that defendant repeatedly add after its name what plaintiff surely knew, that it was a debt collector.  See Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 668 (S.D.N.Y. 2006) ("[T]he courts appear to agree that to comply with § 1692e(11), the debt

collector must 'clearly' be identified in the communication to the debtor. 'A debt collector satisfies subsection 11's notice requirement as long as it is clear from the subsequent letter that the sender is a debt collector.' (quoting Epps v. Etan Indus., Inc., 1998 WL 851488, at *8 (N.D. Ill. Dec. 1, 1998))).

To find a violation of the statute here would be protecting a known defaulting debtor against a compliant debt collector by a bizarre and idiosyncratic construction of it. "Consequences cannot alter statutes, but may help to fix their meaning. Statutes must be so construed, if possible, that absurdity and mischief may be avoided." In re Rouss, 221 N.Y. 81, 91 (1917) (Cardozo, J.); see also Holy Trinity Church v. United States, 143 U.S. 457, 459 (1892) ("It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers."); John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387 (2003). Therefore, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

## II. Motions for Attorneys' Fees and Sanctions

The FDCPA provides that "in the case of any successful action to enforce the foregoing liability," a defendant is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). Plaintiff's motion for attorneys' fees is denied because he did not prevail in this action.

The statute further provides that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Id. Defendant's motion for attorneys' fees is granted. The Court's determination that this action is brought in bad faith is made by a finding that this plaintiff is not "the

least sophisticated consumer" who did not fully understand that the communications he received were from a debt collector and was a consumer the statute was not designed to protect.  In addition to the facts as stated above are court records of which the Court takes judicial notice.  Fed. R. Evid. 201(c)(1).  Those records reveal that on the very same day, September 13, 2012, this plaintiff filed four complaints in addition to this one, each naming as defendant a different debt collector and each assigned to a different judge of this court and each complaint virtually identical in composition, alleging the offending event as having occurred on or about November 2011.  Those cases are Majerowitz v. Malen & Assocs., P.C., 12-CV-4587; Majerowitz v. Harvard Collection Servs., Inc., 12-CV-4589; Majerowitz v. Daniels Norelli Scully & Cecere, P.C., 12-CV-4590; Majerowitz v. Forster & Garbus LLP, 12-CV-4591; and this one.  The assignment of these cases to five different judges would have been avoided if Local Rule 50.3.1 "Related Civil Cases" was observed and Section VIII of the Civil Cover Sheet "Related Case(s) if any" to be completed by plaintiff's attorney was not left blank.

The foregoing facts prompt me to recall an observation I made in Jacobson v. Healthcare Fin. Servs., Inc., 434 F. Supp. 2d 133, 138–39 (E.D.N.Y. 2006) as follows:

> Ironically, it appears that it is often the extremely sophisticated consumer who takes advantage of the civil liability scheme defined by this statute, not the individual who has been threatened or misled.  The cottage industry that has emerged does not bring suits to remedy the "widespread and serious national problem" of abuse that the Senate observed in adopting the legislation, 1977 U.S.C.C.A.N. 1695, 1696, nor to ferret out collection abuse in the form of "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."  Id.  Rather, the inescapable

> inference is that the judicially developed standards have enabled a class of professional plaintiffs. . . .
>
> It is interesting to contemplate the genesis of these suits. The hypothetical Mr. Least Sophisticated Consumer ("LSC") makes a $400 purchase. His debt remains unpaid and undisputed. He eventually receives a collection letter requesting payment of the debt which he rightfully owes. Mr. LSC, upon receiving a debt collection letter that contains some minute variation from the statute's requirements, immediately exclaims "This clearly runs afoul of the FDCPA!" and – rather than simply pay what he owes – repairs to his lawyer's office to vindicate a perceived "wrong." "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." Watts v. State of Ind., 338 U.S. 49, 52 (1949).

The Court of Appeals reversed my determination in 516 F.3d 85 (2d Cir. 2008). But see Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 513–14 (6th Cir. 2007), reciting that observation in its entirety, concluded with "We echo Jacobson's sentiments and concerns. Lamar fits the description of Jacobson's hypothetical consumer to a tee, and we will not 'countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." Majerowitz, this plaintiff, is that actual consumer.

Rule 11(c) permits a court to impose sanctions for a violation of Rule 11(b), including the following provision:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11.  Defendant's motion for Rule 11 sanctions is denied because there is no indication that it adhered to the procedural requirements of Rule 11(c)(2), which would have afforded plaintiff "the benefits of the twenty-one day 'safe harbor provision' allowing [him] the opportunity to withdraw or correct its allegedly frivolous claims." Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 141–42 (2d Cir. 2002).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment, DENIES plaintiff's cross-motion for summary judgment, GRANTS defendant's motion for attorneys' fees, DENIES plaintiff's motions for attorneys' fees, and DENIES defendant's motion for sanctions.

**SO ORDERED.**

Dated:        Brooklyn, New York
              August 15, 2013


_____/s/_____
I. Leo Glasser
United States District Judge